HON. RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| HO TRAN, | IN ADMIRALTY |
|---|---|
| Plaintiff, | No. CV6-1275 RSM |
| v. | |
| ARCTIC STORM MANAGEMENT GROUP, LLC; ARCTIC FJORD, INC., *in personam;* and F/V ARCTIC FJORD, her engines, tackle, gear and appurtenances, *in rem,*, | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendants. | |

Plaintiff Ho Tran opposes defendants' motion for partial summary judgment, and for the reasons set forth below, respectfully asks that it be denied in its entirety.

**I. FACTS**

On August 9, 2005, Ho Tran suffered a traumatic closed head injury while operating a fish-gutting machine aboard Arctic Fjord, a catcher-processing vessel owned by defendants Arctic Storm Management Group, LLC and Arctic Fjord, Inc. (collectively, "Arctic"). The machine, identified as "Baader #2," was installed on the Arctic Fjord's factory deck in 1998. Declaration of Jeffrey Cowan, TAB 1, page 5.[1] It is operated by two people who stand next to

---

[1] "TAB" refers to the numbered attachments to the Declaration of Jeffrey Cowan in Support of Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment, filed herewith.

PLAINTIFF'S OPP. TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 1
[USDC WD WA NO. CV6-1275 RSM]

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

each other, facing the machine. At the time of his injury, Mr. Tran's job was to control the rate at which fish were inserted into the machinery for heading and gutting. Tran Dep., TAB 2, 64:23-67:17. The two operators stand on a grated platform raised above the deck; at the time of his injury, Mr. Tran was standing to the right, close to the right edge of the platform. Rafanan Dep., TAB 3, 19:7-16; Declaration of Steven Wiker, Ph.D., filed herewith, at page 56, Fig. 18. A guardrail was installed behind the operators to prevent them from falling backwards off the platform. However, there were no guardrails at the right or left side of the platform. Wiker Declaration, at ¶¶ 12, 16, 19 and pages 54-59, Figs. 16-21. About 11:00 in the evening of August 9, 2005, when the Arctic Fjord was rocking in four to six foot seas, Mr. Tran fell off the right side of the platform. TAB 3, 24:3-11; 75:3-13; TAB 4. He struck his head, and lost consciousness for several minutes. TAB 5. He has no memory of the events immediately before and after his loss of consciousness. TAB 2, 99:22-101:10; 111:1-11.

Mr. Tran was subsequently diagnosed as having suffered a closed head injury and concussion. Litsky Dep., TAB 6, 17:7-20; 39:18-40:5; 54:18-25. He has been treated for postconcussive syndrome, the symptoms of which include memory loss, loss of concentration, cognitive disturbances, headaches, anxiety and depression. TAB 6, 48:8-49:21; and Exhibit 4 to that deposition. Mr. Tran is currently in an outpatient head injury rehabilitation program at the Rehabilitation Clinic at Good Samaritan Hospital in Tacoma.

On August 31, 2006 Mr. Tran filed a "Seaman's Complaint for Damages," alleging causes of action for negligence under the Jones Act, 46 U.S.C. § 30104, and unseaworthiness and maintenance and cure under the general maritime law. Docket No. 1. A bench trial is set for December 4, 2007.

---

References to deposition transcripts are to the page number found on the upper right of the transcript, and to the line numbers.

PLAINTIFF'S OPP. TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 2
[USDC WD WA NO. CV6-1275 RSM]

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

# II. ARGUMENT AND AUTHORITY

**ARCTIC FAILS TO CARRY ITS BURDEN OF SHOWING THE COMPLETE ABSENCE OF EVIDENCE SUPPORTING PLAINTIFF'S CAUSES OF ACTION; MR. TRAN PROVIDES EVIDENCE OF NEGLIGENCE, UNSEAWORTHINESS AND CAUSATION BY WAY OF HIS EXPERT'S DECLARATION.**

On a motion under Fed.R.Civ.P. 56(c), summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. "A genuine issue" exists where there is evidence before the court upon which the trier could reasonably find in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510-12, 91 L.Ed.2d 202 (1986). The moving party must first point out the absence of evidence in support of the non-moving party's claims or defenses; if the non-moving party can then show evidence that points to a genuine issue of fact, summary judgment will be denied. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Evidence offered by the non-moving party is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson*, *supra*, at 255, 80 S.Ct. at 2513. Summary judgment motions thus turn on evidence, and a party's inability to carry its respective burden will decide the motion against it.

This motion is addressed to plaintiff's causes of action for negligence under the Jones Act, and unseaworthiness under the general maritime law. On this motion, Arctic fails to carry its burden in the first instance by failing to show the absence of evidence of negligence, unseaworthiness, or causation. Mr. Tran, on the other hand, *has* provided evidence, in the form of an expert declaration, in support of each element of his causes of action.

### A. As a Matter of Law, Neither Mr. Tran's Amnesia Nor the Fact That His Fall Was Unwitnessed Demonstrates the Absence of Arctic's Negligence.

The Jones Act provides a cause of action for negligence to seaman. Mr. Tran's burden of proof at trial will be to show that the injuries he sustained on the Arctic Fjord were caused by Arctic's failure to provide him a safe place in which to work. *See Ribitzki v. Canmar Reading*

PLAINTIFF'S OPP. TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 3
[USDC WD WA NO. CV6-1275 RSM]

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

*& Bates Ltd. Partnership*, 111 F.3d 658, 662 (9th Cir. 1997). The standard to which defendants are held is that of ordinary care under the circumstances. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir.1997). Proof of causation, however, requires only a showing that defendants' negligence played any part, even the slightest, in producing Mr. Tran's injuries. *Ribitzki*, *supra*, at 662, fn. 3, *citing Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 71 (9th Cir.1981) and *Gautreaux v. Scurlock*, *supra*.

The Jones Act, like the common law, imposes the requirement of notice to the defendant of the unsafe or hazardous condition alleged as the cause of the injury. That is, employers, such as Arctic, will only be liable if they knew or, in the exercise of reasonable care, should have known of the unsafe condition at issue. *Ribitzki*, *supra*, at 663. Thus, the Jones Act notice requirement may be satisfied by actual or constructive notice. *Id*. A defendant in possession and control of a vessel has constructive knowledge of hazards that are inherent in any permanent configuration of the vessel. *Id.*, at 664.

Arctic's motion asserts two arguments, both purporting to derive from these rules. The first is that Mr. Tran cannot provide evidence of negligence because he cannot "recollect any details regarding his fall--including what caused it." Motion, 4:6-7. The second is that "there is no evidence that Defendants had notice--via Tran himself or any other crewmember--of any dangerous or defective conditions on Baader No. 2 or the accompanying workstation related to Tran' alleged fall." Motion, 6:8-10. However, neither of these arguments is supported by the authorities cited.

**1. Mr. Tran's inability to describe his fall is evidence of a concussion, and is not grounds for summary judgment.**

Arctic first emphasizes Mr. Tran's inability to recall any details of events immediately preceding his fall at the Baader #2. Motion, 4:7-21. It states, "Tran himself has absolutely no idea what precipitated his fall. Even assuming as true the fact that Tran fell, this solitary scrap of information is insufficient standing alone to carry his burden on summary judgment, and fails

PLAINTIFF'S OPP. TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 4
[USDC WD WA NO. CV6-1275 RSM]

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

to amount to even a scintilla of evidence in support of Tran's case." Motion, 5:21-6:1. Arctic appears to argue that it is entitled to summary judgment as a matter of law because Mr. Tran can't remember details of his fall, and because he offers only the fact of his fall as evidence of negligence. The argument is legally and factually erroneous.

Mr. Tran's inability to remember the events before his fall does not show a complete absence of evidence of Arctic's negligence. A plaintiff's inability, due to traumatic amnesia, to describe the events that caused his injuries will not, of itself, justify dismissal of his case on that ground. *See Ting v. United States*, 927 F.2d 1504, 1508 (9th Cir. 1991). (Summary judgment reversed even though plaintiff's traumatic amnesia prevented him from describing events prior to the trauma.) Mr. Tran suffered traumatic amnesia as a consequence of the concussion he sustained when he fell. The declaration of Tedd Judd, Ph.D., a neuropsychologist who evaluated Mr. Tran, shows that postconcussive amnesia is typical of concussions of the kind suffered by Mr. Tran, and that his inability to remember events just before and just after the accident is consistent with his injury.

> A common phenomenon of traumatic brain injury is posttraumatic amnesia. Posttraumatic amnesia is the loss of memory for the period of time around a traumatic brain injury, during the period of time that the person was awake and functioning to some degree. This has two components, retrograde amnesia and anterograde amnesia. Retrograde amnesia is loss of memory for the period of time leading up to the traumatic brain injury while anterograde amnesia is loss of memory for the period of time after the injury...
>
> According to my review of the medical records and my interview of him, Ho Tran has posttraumatic amnesia for the period of time around his traumatic brain injury on 8/9/05. He apparently has some vague memory of the experience of striking his head on a machine and of falling, but not clear memories of the nature of the accident and its cause. This is typical of posttraumatic amnesia and represents the shorter retrograde amnesia component with fuzzy edges...
>
> To summarize, on a more-probable-than-not basis Mr. Tran has posttraumatic amnesia from his traumatic brain injury and that explains his inability to describe the details of the events leading up to his injury.

PLAINTIFF'S OPP. TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 5
[USDC WD WA NO. CV6-1275 RSM]

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

Declaration of Tedd Judd, Ph.D., ¶¶ 3-5, filed herewith. Mr. Tran's retrograde amnesia is not evidence that he is unable to demonstrate Arctic's negligence.

Likewise, the fact that Romeo Rafanan, Mr. Tran's coworker, did not see him fall, Motion, 5:3-21, would only satisfy Arctic's evidentiary burden if eyewitness testimony were a prerequisite to a Jones Act recovery as a matter of law. But this is not the law, and the absence of eyewitnesses does not compel summary judgment. *See Ribitzki v, Canmar*, *supra*, at 661. (Summary judgment on unwitnessed accident reversed.) The fact that Mr. Tran's fall was unwitnessed does not demonstrate the complete absence of evidence to support his claims.[2]

**2. The declaration of Steven Wiker, Ph.D. is evidence that Arctic was negligent in failing to removed known hazards from the Baader #2.**

Moreover, Arctic misstates Mr. Tran's case by asserting that he offers only the fact of his fall as evidence of negligence. Motion, 5:22-23 ("... this solitary scrap of information is insufficient standing alone to carry his burden..."). On the contrary, Mr. Tran offers the expert testimony of Steven Wiker, Ph.D., who has provided a detailed opinion on the cause of his fall. The substance of this opinion was previously provided to Arctic in the form of a report submitted pursuant to Fed.R.Civ.P. 26(a)(2)(B) on July 10, 2007, and which, in fact, Arctic filed in support of its pending motion to quash plaintiff's 30(b)(6) depositions. Docket # 24, Declaration of David C. Bratz, Exhibit J. Dr. Wiker prepared that report following his inspection of the Arctic Fjord on June 14, 2007. For reasons that are not clear, Arctic ignores

---

[2] In any event, at least two eyewitnesses have given testimony from which it can be reasonably inferred that Mr. Tran did fall, and did sustain a traumatic injury as a result of the fall. Mr. Rafanan stated that he saw Mr. Tran lying on the floor of the factory, bleeding at the side of his head. TAB 3, 72:18-73:1. Craig Anderson, the factory foreman, testified that he came upon Mr. Tran as Mr. Rafanan was struggling to help Mr. Tran to his feet, and noted that Mr. Tran looked like "he wasn't all with it." Anderson Dep., TAB 7, 6:20-7:9; 10:8-11:11. The fact that Mr. Tran sustained a head injury as a result of a fall at the Baader #2 cannot reasonably be disputed.

PLAINTIFF'S OPP. TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 6
[USDC WD WA NO. CV6-1275 RSM]

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

Dr. Wiker's opinions on this motion, even though it is fully aware of their substance. To correct that omission, Dr. Wiker's declaration is submitted.

Dr. Wiker is a professor of ergonomics/human factors engineering and safety engineering. He is also a former Coast Guard officer trained in vessel dynamics, crew protection under various sea states, and vessel buoyancy and movement. On June 14, 2007, he inspected Mr. Tran's workstation on the Arctic Fjord and interviewed Mr. Tran. Wiker Declaration, ¶¶ 1-7. He states:

> Vessels lurch unexpectedly at sea because sea states are not comprised of a single wave set... Workers below decks have no visual cues of wave sets approaching the vessel. Moreover, changes in vessel course or minor movements in a ship's rudder, in combination with swell encounters, can produce unexpected movements that workers above and below decks cannot predict. Vessels provide hand rails and other passive fall protection or recovery systems to protect crewmembers. [¶ 13]

> Following my inspection, I found that Mr. Tran's workstation was not safe, it was not free from recognized fall hazards, the nature of the fall and injury experienced by Mr. Tran could be expected given the lack of guard rail to the side of the work platform, and the workstation design and layout contributed to his fall and subsequent injuries. [¶ 8]

> The vessel owners and operators recognized the fall hazards imposed by the design of the work platform used by Mr. Tran and provided a guardrail on the platform to the rear of the workers to guard against fall off of the platform onto surrounding equipment and structures that would cause bodily injury. The same hazards existed to the side of the workers; yet no guardrail was provided. This is a violation of the General Duty Clause and of specific walkway and fall-prevent federal regulations... [¶ 9]

> I am well aware of the memorandum of agreement between OSHA and the U.S. Coast Guard. The objective of the agreement was to share responsibility for vessel compliance with safety and health standards that spanned OSHA and Coast Guard safety and health regulations. This agreement was made to increase efficiency and avoid confusion about jurisdictional responsibility for inspection and enforcement of OSHA and Coast Guard regulations. The agreement aims to provide a safe and healthful workplace for vessel crews, passengers and contractors aboard vessels. At a minimum, the memorandum of agreement provides acknowledgment of the applicability of OSHA standards aboard marine vehicles such as that involved in Mr. Tran's accident and injury. [¶ 5]

> Section 5(a)(1) of the Occupational Safety and Health Act requires:

PLAINTIFF'S OPP. TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 7
[USDC WD WA NO. CV6-1275 RSM]

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

> "Each employer shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees."

> This general duty is shared across safety and health and employment-related standards such as the Jones Act duty to provide a safe place in which to work, and the seaworthiness doctrine which requires that vessels must be reasonably fit for their intended service. The Human Factors Engineering ASTM Standard for Design of Marine Vehicles also addresses the need to provide passive fall protection on platforms in which workers can fall onto machines or structures that can cause bodily injury. [¶ 10]

> Mr. Tran's workstation was unsafe. It exposed him to recognized hazards that could and did produce his injurious fall. Only automobile accidents kill and injure more workers than falls. The basis for falls and fall prevention are well understood by the engineering and safety community. Standards address this problem. The vessel recognized the hazard and provided some but not complete protection. The hazard was substantial in nature and risk of fall was material. Thus, the workstation provided to Mr. Tran was unreasonably hazardous for its intended activities. It was an unsafe place in which to work and constituted an unseaworthy condition. The configuration of the workstation was a significant cause of Mr. Tran's injuries. [¶ 20]

Negligence in this case is premised on Arctic's failure to meet recognized safety standards, which is a breach of its Jones Act duty to provide a safe working environment. Dr. Wiker's declaration is evidence of that failure and breach, and demonstrates negligence and causation sufficient to carry plaintiff's burden on this motion.

In its brief, Arctic relies on *Bell v. Fishing Company of Alaska*, 2007 U.S. Dist. LEXIS 31879 (W.D. Wash. 2007), Motion, 6:1-2, in which this Court granted summary judgment in a seaman's negligence and unseaworthiness action. Arctic cites Bell for the proposition that "[t]he mere occurrence of an injury is not alone sufficient to create liability; a plaintiff must show that the employer's conduct fell below the required standard of care." Motion, 6:3-5. At issue in Bell was the condition of a stairway on which the plaintiff fell, and which he alleged was unreasonably hazardous and constituted an unseaworthy condition of the vessel. In support of their motion, the defendants provided the declaration of an expert stating, among other things, that the stairway was not hazardous and that it complied with applicable regulations. In granting the motion, the Court observed, "Plaintiff has provided no evidence whatsoever, by

PLAINTIFF'S OPP. TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 8
[USDC WD WA NO. CV6-1275 RSM]

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

way of an expert declaration or otherwise, to controvert this expert declaration that the stairway in question is fully compliant with all applicable standards, and does not present a slipping or tripping hazard." *Id.*, at 14. But here, unlike Bell, plaintiff *has* provided an expert's declaration that Mr. Tran's workstation was unreasonably hazardous, that the vessel was unseaworthy, and that these conditions contributed to his injury. Dr. Wiker's declaration is precisely the kind of evidence courts recognize as sufficient to preclude summary judgment.

Moreover, unlike the Bell defendants, Arctic does not properly support its motion with expert opinion. Arctic does cite a report prepared by Rick Gleason, attached as exhibit F to the declaration of David C. Bratz, which, Arctic states, "found nothing unsound in the machinery or work area." Motion, 10:13-14. However, this report is unsworn, and Arctic submits no declaration by Mr. Gleason stating his opinions and the facts on which they are based. Accordingly, his report may not properly be considered under Fed.R.Civ.P. 56(e). *Fowle v. C & C Cola*, 868 F.2d 59, 67 (3rd Cir. 1989) (unsworn report of expert is not competent evidence on motion for summary judgment). Indeed, Arctic's use of the Gleason report illustrates the very evidentiary defect that Rule 56(e) is intended to guard against. That is, Arctic offers only its version of Mr. Gleason's conclusion, that he "found nothing unsound" at Mr. Tran's work area. In fact, the report merely notes that no OSHA violations were identified. It does not address compliance with OSHA's general duty clause, does not discuss compliance with Jones Act negligence standards or unseaworthiness standards, and does not find conformity with human factors engineering standards. Without such analysis, the report cannot be read as a confirmation of the overall "soundness" of the workstation, which is what Arctic attempts to convey. The Gleason report is hearsay, and Arctic's misleading characterization of the report is double hearsay. Accordingly, plaintiff notes his objection to the report, and asks that the Court disregard it on this motion. See *Capobianco v. City of New York*, 422 F.3d 47, 55 (2nd Cir. 2005) (challenge to uncertified documents in summary judgment proceeding must be timely, or

PLAINTIFF'S OPP. TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 9
[USDC WD WA NO. CV6-1275 RSM]

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

waived), citing 10A Wright *et al*., Federal Practice & Procedure § 2722, at 384-85 (3d ed. 1998).

Arctic has not carried its burden of showing the absence of evidence to support Mr. Tran's allegation of negligence. The Wiker declaration satisfies Mr. Tran's evidentiary burden on this motion, and is sufficient to preclude summary judgment on the issue of negligence.

**3. Arctic had actual and constructive notice of the risk of falls at the Baader #2 workstation.**

Arctic's discussion of notice in Jones Act cases focuses exclusively on actual notice. Arctic asserts that it had no notice of any dangerous or defective condition of Mr. Tran's workstation because Mr. Tran never previously struck his head or fell while working on the Baader #2; because his coworker, Mr. Rafanan, had not himself been injured on that machine, nor seen anyone else injured there; and because "Defendants have no reported incidents of crewmembers being injured, let alone falling or hitting their heads, while working at Baader No. 2." Motion, 6:8-8:10. These facts, Arctic argues, prevent plaintiff from establishing a *prima facie* case. This argument misapprehends the law of notice in Jones Act cases.

In *Havens v. F/T Polar Mist*, 996 F.2d 215 (9th Cir.1993), the Ninth Circuit describes the Jones Act notice requirement with the familiar formulation, "There must be some evidence from which the trier of fact can infer that the owner *either* knew, or in the exercise of due care, *should have known* of the unsafe condition." *Id.*, at 218 (emphasis added). This language is quoted in *Perkins .v American Electric Power Fuel Supply*, 246 F.3d 593, 599 (6th Cir. 2001) as a "fundamental principle." In *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372 (5th Cir. 1989), the court noted that "[t]he standard of care is not 'what the employer subjectively knew, but rather what it objectively knew or should have known.'" *Id.*, at 374 (citation omitted). As summarized by the Sixth Circuit in *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 449-50 (6th Cir. 2001):

> To recover for injuries caused by the alleged negligence of an employer under the Jones Act, a plaintiff must show that her employer failed to provide a safe workplace by neglecting to cure or eliminate obvious dangers of which the employer or its agents

PLAINTIFF'S OPP. TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 10
[USDC WD WA NO. CV6-1275 RSM]

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

knew or should have known and that such failure caused the plaintiff's injuries and damages. *Perkins*, 246 F.3d at 599... In so doing, the plaintiff must show "actual or constructive notice to the employer of the defective condition that caused the injury." [citation]; *see also Perkins*, 246 F.3d at 599.

Applying these principles here, there is ample evidence that Arctic had both actual and constructive notice of obvious dangers at the Baader #2 workstation.

### *Actual notice*

Arctic first claims that it lacked notice of the hazards of Mr. Tran's workstation because Mr. Tran never previously had the same kind of injury at the Baader #2, and because Mr. Rafanan, his coworker, had no such injury nor knew of anyone who did. Motion, 6:8-7:23. However, even if true, that fact cannot justify summary judgment as a matter of law. *SeeRibitzki v. Canmar*, *supra*, at 661. (Employer claimed no employee other than plaintiff was injured in area in question; summary judgment reversed.)

Arctic next offers the declaration of Tauni Ness, its human resources director, which states that Arctic had "no reported incidents of crewmembers being injured, let alone falling or hitting their heads while working at Baader No. 2," Motion, 7:22-23. But Ms. Ness's testimony shows that it is the limited nature of Arctic's record-keeping that accounts for this: Arctic does not keep records of slips and falls unless they involve injuries requiring medical treatment, and only keeps such records for use in possible litigation, not for any other purpose, such as identifying hazardous conditions. In her Fed.R.Civ.P. 30(b)(6) deposition, Ms. Ness testified as follows:

Q. (BY MR. COWAN) Do you keep reports of incidents in which there's no reported injury?

MR. BRATZ: Object to the form of the question.

Q. (BY MR. COWAN) Do you understand the question?

A. I think.

Q. Supposing somebody slips on the deck and falls but isn't hurt, isn't injured. Is any report of that incident made?

PLAINTIFF'S OPP. TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 11
[USDC WD WA NO. CV6-1275 RSM]

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

1  A. The report of the incident is filled out by the crew member. So if they don't report what
2  happened to them, there wouldn't be a report done, no.

3  Q. So if, hypothetically, a crew member on the deck slips and falls and is observed by a
   supervisor to have slipped and fallen, but the crew member doesn't fill out a form, the
4  supervisor isn't required to actually make some kind of report of that incident?

5  MR. BRATZ: Object to the form.

6  Q. (BY MR. COWAN) Is that accurate?

7  A. I don't think the supervisor is required to fill out something like that, no.

8  Q. You said that you keep records -- well, I'm going to make an inference based on what you
   said. It sounds like you keep the records mainly as in the event that there's some kind of claim
9  made arising from the incident, that you will have on hand a record of the incident that you can
   use in addressing the claim.
10
   MR. BRATZ: Object to the form.
11
   Q. (BY MR. COWAN) Is that a reasonable inference?
12
   A. Yes.
13
   Q. Is there any other purpose that you have for keeping these records?
14
   A. I keep them because I used to work as a paralegal, and I understand that sometimes records
15 like this are requested.

16 Q. In litigation, you mean?

17 A. In litigation, yes.

18 Q. Any other reason?

19 MR. BRATZ: Besides what she's already testified to?

20 MR. COWAN: Yes.

21 A. I can't think of one at the moment.

22 Ness Dep. TAB 8, 9:15-11:8.

23     Since there are no records of falls in which no injury is reported, even if witnessed by a

24 supervisor, it follows that Arctic does not know the true number, and causes, of falls that occur

PLAINTIFF'S OPP. TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 12
[USDC WD WA NO. CV6-1275 RSM]

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

on the Arctic Fjord. Its claim that it has "no reported incidents" of crewmembers falling while working at the Baader #2 may be literally true, but the complete absence of incidents is a consequence of limited record keeping, not a reflection of the real world in which Mr. Tran worked. It may be that workers have fallen numerous times, but by happenstance did not sustain an injury meriting medical attention. Arctic's argument ignores the fact that a hazard may exist in a workplace even though no accident has actually occurred. *See, e.g., Titanium Metals Corp. v. Usery*, 579 F.2d 536, 542 (9th Cir. 1978). Arctic's failure to keep records of all *potentially* dangerous incidents makes its incident-reporting incomplete, and thus utterly unreliable as evidence that Mr. Tran's workplace was hazard-free. Arctic has set up a record system for purposes other than the discovery of workplace hazards, yet now protests, on the basis of that system, that it knew of no such hazards. To assert lack of actual notice on the basis of this kind of record-keeping is to seek the benefits of willful ignorance.

Ms. Ness's testimony, read in the light most favorable to Mr. Tran, fails to demonstrate that Arctic lacked actual notice of the risk of falls at the Baader #2.

In reality, Arctic was fully aware that the Baader #2 workstation presented very hazard that caused Mr. Tran's injury. As Dr. Wiker states in his declaration:

> The vessel owners and operators recognized the fall hazards imposed by the design of the work platform used by Mr. Tran and provided a guardrail on the platform to the rear of the workers to guard against falls off of the platform onto surrounding equipment and structures that would cause bodily injury. The same hazards existed to the side of the workers; yet no guardrail was provided.

Wiker Declaration, ¶ 9. Having installed a guardrail against foreseeable falls at Mr. Tran's workstation, Arctic cannot plausibly argue that it was unaware of the risk of falls at that very location. The back guardrail is evidence of both Arctic's actual knowledge of such risk, and of the opportunity, since the machine was installed in 1998, to eliminate that risk.

PLAINTIFF'S OPP. TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 13
[USDC WD WA NO. CV6-1275 RSM]

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

Arctic offers no evidence showing the absence of its actual knowledge of the risk of falls at the Baader No. 2. Dr. Wiker's opinion is evidence of that risk, and is sufficient to carry Mr. Tran's burden on this motion.

*Constructive notice*

Maritime employers are charged with knowledge of hazards appertaining to the configuration of permanent conditions on their vessels. *Ribitzki v. Canmar Reading*, *supra*, 111 F.3d, at 663-64. Constructive notice exists if, in the exercise of reasonable care, which includes the duty to inspect, the employer would have discovered the hazard alleged. *Id*. The Baader #2 was installed in 1998, and is a permanent condition of the Arctic Storm. The trier of this case could find that a reasonable inspection of the workstation would have disclosed the hazards described by Dr. Wiker at the sides of the platform as well as at the back. Simply put, Arctic offers no evidence that explains why it should not have known of the risk of Mr. Tran's falling off the side of the platform of the Baader #2. Arctic thus fails to show how its failure to discover such risk complied with its duty of reasonable inspection.

Arctic has failed to carry its evidentiary burden of showing the absence of evidence of its constructive knowledge of the risk a falls at the Baader #2.

**B. Arctic Misstates the Law of Unseaworthiness in Seeking Summary Judgment Based on Mr. Tran's Inability to Identify an Unsafe Condition.**

The general maritime law doctrine of seaworthiness imposes on vessel owners the obligation to provide vessels and equipment that are reasonably fit for their intended use. *See, generally*, *Mitchell v. Trawler Racer*, 362 U.S. 539, 55, 80 S.Ct. 926, 4 L.Ed. 2d 941 (1960). A hazardous work environment may constitute an unseaworthy condition, and liability will be established if that condition played a substantial part in bringing about the plaintiff's injury. *Ribitzki v. Canmar*, *supra*, 111 F.3d at 665. Arctic's argument for summary judgment on Mr. Tran's unseaworthiness cause of action is largely the same as its argument with respect to the Jones Act cause of action. The main difference is that Arctic does not reassert lack of notice,

PLAINTIFF'S OPP. TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 14
[USDC WD WA NO. CV6-1275 RSM]

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

since liability for an unseaworthy condition does not require a showing of the vessel owner's actual or constructive notice of the condition. *Mitchell*, *supra*, at 549, 80 S.Ct. at 933.

Nonetheless, Arctic asserts that "there is no evidence that Baader No. 2, or the surrounding workstation, were unfit for its [sic] intended use on August 9, 2005..." because Mr. Tran could not identify anything dangerous about this workstation. Motion, 9:10-10:17.[3]

Arctic appears to argue that Mr. Tran's inability to recall the circumstances of his fall, will, as a matter of law, justify summary judgment on his general maritime law cause of action. However, Arctic cites no authority for this proposition, and its argument seriously misstates the law of seaworthiness.

It is axiomatic that "the shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability." *Mitchell*, *supra*, at 549, 80 S.Ct. at 933. Arctic's argument implies that while a plaintiff need not demonstrate the shipowner's knowledge of an unseaworthy condition, he must demonstrate his own knowledge of that condition. This distorts the seaworthiness doctrine by imposing a burden which does not actually exists in the law. Indeed, Arctic cites no authority for this implied proposition. As a matter of law, Arctic is not entitled to summary judgment because Mr. Tran failed to show his knowledge of the unseaworthy condition alleged as the cause of his injuries.

Mr. Tran offers the opinion of Dr. Wiker as evidence of the unseaworthiness of the Arctic Fjord. In his declaration, Dr. Wiker discusses how the configuration of the Baader #2 workstation was unsafe, and concludes:

> ...the workstation provided to Mr. Tran was unreasonably hazardous for its intended activities. It was an unsafe place in which to work and constituted an unseaworthy condition. The configuration of the workstation was a significant cause of Mr. Tran's injuries.

---

[3] Arctic again cites the Gleason report in this context. Motion, 10:11-14. The inadmissibility of the Gleason report on this motion has been discussed above, and is again noted.

PLAINTIFF'S OPP. TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 15
[USDC WD WA NO. CV6-1275 RSM]

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

1 | Wiker Declaration, ¶20. This opinion, and the analysis on which it is based, is evidence sufficient to meet Mr. Tran's burden on this motion.

### III. CONCLUSION

Arctic has failed to carry its evidentiary burden on this motion because it has failed to point to the complete absence of evidence supporting Mr. Tran's case. Neither Mr. Tran's inability to describe the cause of his fall nor the fact that it was unwitnessed shows Arctic's compliance with the standards of care applicable in this case. Arctic cannot demonstrate that it had no actual or constructive notice of the risk of the injury Mr. Tran sustained. Arctic has provided no competent expert opinion that it has complied with the duty of care under the Jones Act and the general maritime law.

Mr. Tran has submitted expert opinion that Arctic was negligent and that the Arctic Fjord was unseaworthy, and that these conditions were a substantial cause of his injuries. He has thus met his burden on this motion.

Accordingly, this motion should be denied in its entirety.

RESPECTFULLY SUBMITTED THIS 19th day of August 2007.

                                    LAW OFFICE OF JEFFREY COWAN

                                    By /s/ Jeffrey Cowan
                                        Jeffrey Cowan, WSBA No. 19205

                                  MacDONALD, HOAGUE & BAYLESS

                                    By /s/ Melton Crawford
                                        Melton Crawford, WSBA No. 22930
                                    Attorneys for Plaintiff Ho Tran

PLAINTIFF'S OPP. TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 16
[USDC WD WA NO. CV6-1275 RSM]

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961